UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DEQUANA WHITE,

                                        Plaintiff,

                                                                    DECISION AND ORDER

                                                                    14-CV-6100L

                    v.

JEREMY CLEMENT, Registered Nurse,
WESLEY CANFIELD, Doctor, BEN OAKES,
Doctor, JOHN VONHAGN, Nurse
Administrator, CARL KOENIGSMANN,
Chief Medical Officer, and STEPHEN
WENDERLICH, Superintendent,

                                        Defendants.
_____

## INTRODUCTION

Plaintiff, Dequana White, appearing *pro se*, commenced this action under 42 U.S.C.

§ 1983.  Plaintiff, an inmate in the custody of the New York State Department of Corrections and

Community Supervision ("DOCCS"), alleges that defendants violated his rights under the Eighth

Amendment to the United States Constitution by denying him adequate medical care.  Plaintiff also

alleges a violation of his First and Fourteenth Amendment rights based on the allegation that

defendants retaliated against him after he filed grievances and complaints concerning his lack of

adequate medical treatment.

Plaintiff has sued six defendants, all of whom are medical professionals employed by

DOCCS.  On March 26, 2014, plaintiff's retaliation claim was dismissed against all defendants

except for Jeremy Clement, and plaintiff's equal protection claim was dismissed in its entirety.  (Dkt.

#3).  The underlying events, which relate mainly to plaintiff's complaints of chest pain, took place

at Southport Correctional Facility ("Southport") between July 2012 and February 2014.

Defendants have filed a motion for summary judgment. Plaintiff has not responded to the motion.

## BACKGROUND

Plaintiff became a DOCCS inmate at Southport on February 9, 2012.  He alleges that starting around July 16, 2012, he complained of severe chest pain, which made it difficult for him to breathe or lift his left arm.  During the relevant time period, the plaintiff alleges a series of interactions with the medical staff at Southport, who largely ignored his complaints of chest pain. Plaintiff also alleges that to the extent that defendants responded to his complaints, they gave him medicine that was ineffective or inappropriate for his medical needs.

There is no dispute, however, that plaintiff was seen and treated by medical personnel, albeit not to his satisfaction.  Plaintiff details three instances when he was seen by a doctor at Southport, and on one occasion he was sent outside the facility, to Arnot Ogden Medical Center, for a mammogram, the results of which were negative.  Plaintiff does not allege that he received no treatment at all, but that the treatment he received was inadequate.

Between July 2012 and February 2014, plaintiff filed four grievances alleging improper medical care against various staff members at Southport.  On March 3, 2014, plaintiff filed the complaint in this action.

The defendants filed their motion for summary judgment on July 7, 2014 (Dkt. #8). Defendants' motion papers, and this Court's scheduling order (Dkt. #13) put plaintiff on notice of his obligation to respond to the motion, and of the consequences of failing to do so.  As stated, plaintiff has not filed any response to the motion.

## DISCUSSION

### I. Plaintiff's Failure to Respond to the Summary Judgment Motion

Rule 56(e) of the Federal Rules of Civil Procedure provides that "[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denial of the adverse party's pleading, but the adverse party's response by affidavits as otherwise provided in this rule must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party."

The Court of Appeals for the Second Circuit has held that when a party moves for summary judgment against a *pro se* litigant, either the movant or the district court must provide the *pro se* litigant with notice of the consequences of failing to respond to the motion. *Vital v. Interfaith Med. Ctr.*, 168 F.3d 412, 413 (2d Cir. 2001).  In the instant case, defendants' notice of motion for summary judgment (Dkt. #8) and the subsequent order sent by the court (Dkt. #13) gave plaintiff ample notice of the requirements of Rule 56 and the consequences of failing to respond properly to a motion for summary judgment. There is no question that plaintiff has been adequately advised of the pendency of the motion, of the need for him to respond and the form in which he should do so, and of the consequences of not responding to defendants' arguments and factual allegations. He has not done so; therefore the Court may accept the truth of defendants' factual allegations and determine whether defendants are entitled to summary judgment.  *Crenshaw v. Syed*, 686 F.Supp.2d 234, 235-36 (W.D.N.Y. 2010).

### II. Eighth Amendment:  General Standards

In order to demonstrate that medical treatment amounts to "cruel or unusual punishment" prohibited by the Eighth Amendment, a plaintiff must prove that a physician's actions or omissions amounted to "deliberate indifference to a serious medical need." *Estelle v. Gamble*, 429 U.S. 97, 106

(1976). A "serious medical need" is one which presents "'a condition of urgency' that may result in 'degeneration' or 'extreme pain.'" *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994)). In determining whether a serious medical need exists, the Court examines several factors, including whether the plaintiff had an injury or condition "that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Lewis v. Zon*, 920 F. Supp. 2d 379, 388 (W.D.N.Y. 2013) (quoting *Chance*, 143 F.3d at 702).

In assessing whether a care provider displayed "deliberate indifference," the operative question is whether the defendant acted with "a sufficiently culpable state of mind," which "is the equivalent of criminal recklessness." *Hathaway*, 99 F.3d at 553. In the § 1983 context, mere negligence, or even medical malpractice, is not actionable. *See Estelle*, 429 U.S. at 106.

Likewise, an inmate's "mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." *Chance*, 143 F.3d at 703. When a case contains conflicting medical evidence about an inmate's condition, "courts will not attempt to second-guess licensed physicians as to the propriety of a particular course of medical treatment for a given prisoner-patient." *Ross v. Kelly*, 784 F. Supp. 35, 46 (W.D.N.Y.) (quoting *Thomas v. Pate*, 493 F.2d 151, 158 (7th Cir. 1974)), *aff'd*, 970 F.2d 896 (2d Cir. 1992).

## III. Application to this Case

Applying these standards to the case at bar, I find that defendants are entitled to summary judgment, except as to defendant Clement, as explained below. Even giving the complaint the most generous reasonable construction, plaintiff has failed to show that defendants acted with a culpable state of mind. Plaintiff merely alleges his dissatisfaction with the type of medication and treatment given to him.

As to the objective aspect, plaintiff alleges that he complained of extreme pain.  For example, he alleges that on July 19, 2012, he informed defendant Oakes that "it was extremely difficult for him to move his left arm and breath[e], and even wash up in the shower due to the pain he felt in his chest."  Complaint ¶ 13.

As stated, however, plaintiff has not contradicted defendants' assertions in support of their motion.  Plaintiff's medical history, which is outlined in defendant Oakes' declaration (Dkt. #8-4) and its accompanying exhibits, indicates that over the time period at issue, plaintiff complained of a number of symptoms (such as a lump in his breast area), but that he did not complain of the severe pain described in the complaint.

Even assuming that plaintiff's alleged chest pain presented a serious medical need, plaintiff has failed to meet the subjective prong of proving that defendants acted with a culpable state of mind.  The complaint itself catalogs multiple instances where plaintiff was treated by doctors and other medical personnel. The record contains over twenty health records and progress notes between July 2012, and February 2014. (Oakes Decl. Ex. A. at 1-32).

The mere fact that plaintiff was seen by health care staff, standing alone, does not foreclose a § 1983 claim.  But the record shows more than that.  Plaintiff was treated.  With the exception of one defendant, as explained below, his symptoms were not ignored.

Of particular note, the record shows that plaintiff was sent to an outside facility for a mammogram, which came back negative for cancer, but showed that plaintiff had a left breast gynecomastia, *i.e.*, benign swelling of breast tissue, and lipoma, *i.e.*, benign fatty tissue. (*Id.* at 31). According to defendant Oakes, the mammogram was ordered not because of any complaints of pain, but because of the enlargement of plaintiff's breast tissue.  Dkt. #8-4 ¶¶ 25, 28.  Regardless of why defendants took the decisions they did, however, their referral to an outside facility hardly bespeaks deliberate indifference to plaintiff's complaints.

It is clear, then, that plaintiff did receive medical treatment; it was just not to his satisfaction. (*Id.* at 31). But plaintiff's disagreement over the type of treatment he received does not give rise to the level of a constitutional claim. *Chance*, 143 F.3d at 703.

## IV. Claims against Clement

As stated, plaintiff's First Amendment claim against defendant Clement survived the Court's initial review. On the record presented, I find that defendants have not demonstrated that Clement is entitled to summary judgment as to that claim, or as to plaintiff's Eighth Amendment claim against Clement. At this point, defendants have not rebutted plaintiff's allegations that Clement ignored his serious symptoms, and that he did so in retaliation for plaintiff's filing of grievances.

The standards applicable to Eighth Amendment medical claims have been set forth above. As to First Amendment retaliation claims, plaintiff must show that: (1) he engaged in constitutionally protected conduct; (2) the defendant took adverse action against him; and (3) there was a causal connection between his protected conduct and the defendant's adverse action. *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001), *overruled on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

With respect to the protected-activity prong, while there do not appear to be any copies in the record of any grievances filed by plaintiff, his *pro se* complaint alleges that he did file grievances about Clement. Plaintiff alleges that Clement said to plaintiff, when plaintiff came to see him for medical treatment, "Spell my name right next time you write your grievances, being a cry baby is not going to make me change your meds." Complaint ¶ 40. Plaintiff also alleges that because of the "grievances and complaints plaintiff filed," Clement "refused to document and report [that] plaintiff was vomiting blood and having nose bleeds as an adverse reaction to Naproxen 500 mg pills," and that as a result, plaintiff continued to be prescribed Naproxen. *Id.* ¶ 41.

In support of their motion for summary judgment, defendants do not contend that plaintiff failed to engage in protected activity. In their brief, defendants argue that there is no "way to

determine the temporal relation of Clement's alleged comments to whatever grievances or complaints plaintiff may have filed," Dkt. #8-3 at 18, but they do not appear to deny that plaintiff did file grievances or that he engaged in constitutionally protected activity. *See Medina v. Skowron*, 806 F.Supp.2d 647, 650 (W.D.N.Y. 2011) ("The filing of prison grievances is a constitutionally protected activity") (citing *Graham v. Henderson*, 89 F.3d 75, 80 (2d Cir. 1996)).

It is defendants' burden, as the moving parties, to identify those portions of the record which they believe demonstrate the absence of a genuine issue of material fact. Since they have failed to do so here, the Court will assume, for purposes of deciding defendants' motion, that plaintiff did engage in constitutionally protected activity. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006).

As to the second prong of plaintiff's First Amendment claim–adverse action against him by Clement, as a result of plaintiff's grievances–I find that on the record before me, there are genuine issues of fact that preclude the entry of summary judgment for defendant.

The evidence relating to Clement's adverse action also relates to plaintiff's Eighth Amendment claim. Both claims are based on the allegation that Clement refused to treat or document plaintiff's serious medical problems.

Clement's alleged statement to plaintiff that "being a cry baby is not going to make me change your meds," Complaint ¶ 40, is not, viewed in isolation, enough to sustain either claim. Although it could be interpreted as evincing some resentment over plaintiff's grievances, by itself it shows only that Clement believed that he had administered or prescribed the correct treatment for plaintiff, and that he would not be cowed into changing that treatment simply because plaintiff had filed a grievance against him.

Plaintiff alleges more than that, however. He alleges that "Clement refused to document and report plaintiff was vomiting blood and having nose bleeds as an adverse reaction to Naproxen 500 mg pills," and that as a result, plaintiff continued to be prescribed Naproxen, "which caused him excruciating pain." Complaint ¶ 41. That allegation, if true, indicates that Clement not only stuck

to his prior course of treatment, but that he ignored evidence that the treatment was having serious adverse side effects.

Citing plaintiff's medical records, defendants state that on December 11, 2013, Clement saw plaintiff, who was complaining of "chest pains [and] coughing up blood," but that Clement "did not find any physical problems," and that he saw "no evidence of blood anywhere." Def. Rule 56 Statement (Dkt. #8-2) ¶ 75. In support of that assertion, defendants cite plaintiff's medical record, and Oakes's and Canfield's declarations, which are apparently based on that record. *See* Dkt. #8-4, #8-5.

There is no statement in the record from Clement, though. Oakes and Canfield both state that they are "not aware of Nurse Clement denying medical treatment to any inmate," including plaintiff, Dkt. #8-4 ¶ 92; Dkt. #8-5 ¶ 83, but they do not claim to have been present on all occasions when plaintiff was seen by Clement, or to have any personal knowledge of whether Clement did in fact refuse to document plaintiff's symptoms, as alleged in the complaint. In addition, assuming the truth of plaintiff's allegation that Clement deliberately refused to document plaintiff's complaints or symptoms, the absence of any notations in plaintiff's medical record that he was actually vomiting or coughing up blood when he was seen by Clement is hardly surprising. If anything, it is consistent with plaintiff's claim.

Assuming the truth of plaintiff's allegation that Clement deliberately refused to document his symptoms, in retaliation for plaintiff's grievances, that refusal could constitute both deliberate indifference to his serious medical needs, and adverse action sufficient to sustain a First Amendment claim. Plaintiff's allegation that he "was vomiting blood" certainly rises above the level of a minor, transient symptom. Ignoring such a symptom could constitute deliberate indifference. *See Morgan v. Maass*, 73 F.3d 369 (Table), 1995 WL 759203, at *2 (9th Cir. 1995) (defendant's alleged response to plaintiff's report that he was vomiting blood, that plaintiff should "wait until sick line," which would not start for several hours, raised a material issue of fact as to whether defendant's conduct constituted deliberate indifference); *Cooper v. City of Cottage Grove*, No. 13-CV-0551, 2014 WL

4187558, at *5 (D.Or. Aug. 21, 2014) ("a jury could infer that vomiting blood demonstrates an obvious serious medical need").  Clement's alleged refusal to take note of that symptom, because plaintiff had filed a grievance against him, also might well dissuade a typical inmate in plaintiff's position from continuing to pursue grievances against Clement.

Based on the record before me, then, I conclude that, drawing all reasonable inferences in favor of plaintiff, Clement's alleged refusal either to document or treat plaintiff's complaints and symptoms, could support a finding that Clement took adverse action against plaintiff, and that he was deliberately indifferent to plaintiff's serious medical needs.

That is not to say that the Court finds plaintiff's allegations against Clement credible, or that his claims against Clement have merit.  That is not for the Court to decide, at this juncture.  The issue before me now is whether defendants, as the moving parties, have succeeded in demonstrating the absence of any genuine issues of material fact as to those claims.  For the reasons stated above, I conclude that they have not done so, as to defendant Clement.

## CONCLUSION

Defendants' motion for summary judgment (Dkt. #8) is granted in part and denied in part. All of plaintiff's claims in this action are dismissed, except as to his First Amendment and Eighth Amendment claims against Jeremy Clement.  In all other respects, defendants' motion is denied.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       July 22, 2015.

- 9 -